The United States Court of Appeals for the 11th Circuit is now open in court of law. God save the United States from the dark. Please be seated. We're here for oral argument in Michael Sockwell v. Commissioner, Alabama Department of Corrections. Michael Rayfield is here for the appellant Sockwell. Robert Overing is here for the Commissioner. And, Mr. Rayfield, you may begin your argument. Thank you, Your Honor. May it please the Court, I am Rayfield for the appellant Michael Sockwell. In this case, Sockwell's prosecutor struck a jerk because he was, in the prosecutor's own words, the same race as the defendant. And I'm going to start with a piece of this case that's gotten a little less attention than it deserves. I would submit that it is hard to imagine a stronger prima facie case of discrimination than this one, even more so than the decisions by this court that have granted habeas relief under Batson. Sockwell's trial was in January of 1990. And by that time, his prosecutor, Ellen Brooks, had demonstrated time and time again that she was unwilling to follow Batson. In 1987 and 1988, Brooks tried Powell v. State and Byrd v. State. Both convictions were reversed under Batson. And in Byrd, the Alabama Supreme Court went out of its way to condemn Brooks by name, noting a, quote, pattern of racially discriminatory strikes in the cases that she herself had prosecuted. In 1989, a year before Sockwell's trial, Brooks tried Yelder v. State. She was reversed again under Batson, and the Supreme Court this time expressed regret that the prosecution had once again created a strain on the judicial and economic resources of this state. But Brooks did not get the message. In January 1990, about a week before Sockwell's trial, a week before, she tried Sims v. State, another reversal under Batson. And in all of these cases, Brooks struck at least 75 percent of the black jurors, and the appellate courts used a whole number of adjectives to describe her explanations.  So your argument, essentially, as I understand it, is that the error took place at Batson's third step because the Alabama Supreme Court failed to take into consideration all of the relevant circumstances. Is that right? And so you're arguing one of the relevant circumstances, right? That's part of our argument. Okay. Let me ask you this. Let me ask you this question. Are we still bound by our decision in Wallace v. Commissioner that if you have a non-race-based reason and you have a race-based reason, there's a dual motivation analysis that applies in order to defeat a Batson challenge? So I think it's not so much Wallace as it is the Supreme Court's decision in Flowers most recently said that the bare minimum is you have to show that the race of the juror was at least a substantial motivation for the strike. The Supreme Court has never actually addressed how this dual motivation test works. I think it would be pretty awkward to apply it in this case simply because there's supposed to be a procedure here. Like because the trial court didn't actually give any rationale, the state court didn't raise this, the prosecutor didn't raise this as an affirmative defense and there was no process where the trial judge asked the state court, the prosecutor, I'm sorry, to explain whether she would have struck Davis. So Wallace is no longer good law, right? No, Wallace is certainly good law. I'm just pointing out that in this case it would be procedurally, I think, improper to apply the dual motivation test because the state court expressly rejected that test and because— Is it better reason for the point you're about to make or the point you're making that we have to apply clearly established law as it existed at the time that the Alabama Supreme Court reviewed or made its findings? In other words, the Alabama Supreme Court had Federal law at that time and the question that we ask is did it unreasonably apply clearly established law of the Supreme Court at the time that it made its decision? And so the timeframe we have to look at is the timeframe from there which predates some of the stuff that we're talking about here, right? I mean, isn't that the answer? I think that's right. Also, at step two, recall our argument is that the state court made an unreasonable determination of fact by finding that the strike of Davis was race neutral. So I'm not even sure that the post-1990 law comes into play at that portion of the analysis. But we can take— In other words, there's a failure at step two as part of your argument here as a matter of fact. Yes. Also, just to parse this out, our argument is that there was an unreasonable determination of fact at step two and at step three there were two unreasonable determinations. One was the failure to take all relevant circumstances into account, which was a violation of clearly established law. And then the second error was assuming the state court—contrary to our argument— assuming the state court implicitly applied a step three analysis, its conclusion was contrary to both fact and law. Well, how much weight—well, putting a pin in your response to Wallace because I actually am a little confused as to how the Alabama Supreme Court's decision to what I view as reject this dual motivation standard applies in light of Wallace. So that would be one thing I think that does require a little bit of discussion. But in terms of step one, which is the Prima Fasci case, as opposed to step three, which is all the circumstances, how do we weigh the prosecutor's history of being found to have violated Batson? It seems that that was enough for purposes of getting through step one, but then what weight do we attribute to that for purposes of step three? Yes. So the Supreme Court has made clear in Flowers that you take the Prima Fasci case factors into account at step three, and that includes a historical pattern of strikes. In Flowers, for example, the court explained that, in fact, even before Batson ever happened, the only way that a defendant could establish racial discrimination in jury selection was by pointing to a historical pattern. So it remains a relevant factor at step three as well. And so you start with that history, and then just to continue going through the factors, when Sockwell's trial arrives, we get exactly the same approach that Ellen Brooks was taking a week before in Sims v. State. Even though black jurors made up less than a quarter of Sockwell's veneer, Brooks struck 80 percent of them, and that rate is quadruple the rate that Brooks was striking white jurors on the panel. So the bottom line is, with that history and those rates, Brooks would have had to come up with a really solid explanation in the case of a Batson challenge. But, of course, when Brooks attempted to explain the strike of Eric Davis, she did exactly the opposite. She was asked to give her reasons for striking Davis, and her first reason was, Mr. Davis, according to my notes, is a black male, approximately 23 years of age, which would put him very close to the same race, sex, and age of the defendant. And I've been working on this case for several years, and I've never been able to come up with a reason at that stage that isn't exactly what Batson forbids, which is to assume that a black juror is less likely to convict a black defendant. Well, two separate courts did, so why don't you address the reasons that they gave? Because I understand that you don't see it that way, but there are two other, one a Federal judge and one five justices of the Alabama Supreme Court who read that same exact thing in addition to things you just didn't read and made a different conclusion. So why is the reasons that they gave for a different conclusion wrong? Because that's really the standard we have to review. At least with respect to the State court. That's right. So the State court's theory was that this was just basically just an introduction, a descriptive statement based on the prosecutor's notes. It also called it a predicate for identification. So essentially nonsubstantive. And we would say that that's unreasonable under AEDPA for two main reasons. First, under Supreme Court and circuit precedent, even just noting a juror's race on a written jury list is an indicator of discrimination. That's Foster v. Chapman. That's Atkins. That's Miller v. Dredge. But more importantly, even if Brooks had a reason to describe Davis' race, either in writing or orally, she didn't have any legitimate reason to compare Davis' race to Sockwell's. And she didn't draw a similar comparison for any of the white jurors. And that's why I just returned to the definition. Is that because none of them had the same race as the defendant? Well, she didn't say, for example. In other words, it wouldn't make sense for her to have made that comparison to a white juror, right? That's fair. I mean, I guess if she were to be describing the jurors. Let me dig into the record a little bit. So I read the entire voir dire, as I know all of us have many times. And if you look at the voir dire, the way that this happened is the court first looked at her and said, give me the reasons why, after the prima facie case was established. And then she went through not just the jurors that were struck. She went through every single juror, both white and nonwhite. And at the beginning of each of those, as you know, what she said was, juror number 53, she said the name, and then she gave a descriptor. In some cases, she gave just race. In some cases, she gave age of race and then gave her reason. Did I describe anything incorrectly? No, I think that's correct. Okay. So as I understand it, and the Alabama Supreme Court doesn't explain this that well, but I think the district court explained it a little in greater detail, is that if you look in context, what it seems is she was giving a descriptor of every juror before then she went into the reason. And so to ascribe the description as a reason sort of is, in context, not quite what she was doing with regard to every juror, white and nonwhite. Right? Well, and that might be reasonable with respect to what she first said, which was black male. But there was absolutely no reason. She had already described Davis's race twice at that point, once when questioned by the trial court and once when questioned by defense counsel. But then she went beyond that, and she brought Sockwell's race into her answer by saying that he was the same race, that Davis was the same race. She didn't say same race. She said the same just as the defendant. And so she gave three or four descriptors. Right? She gave sex. She gave race. She gave age. And then she made the comment of just like the defendant, something like that. Right? That's not quite right. She said, Ms. Davis, according to my notes, is a black male, approximately 23 years of age, which would put her very close to the same race, sex, and age of the defendant. Right. So the three things she described, she says those are the same three things like the defendant. How is that not descriptive? Isn't that by definition descriptive? No. Well, it's descriptive, but it's not describing anything that's a valid justification for this. There was no – Right. Isn't that the whole point? In other words, it has nothing to do with the reason for a strike. It has everything to do with just describing who they're talking about. So in other words, right now we're – at this point we're – this was a long day. So jury selection was at the beginning of the day. This is towards the end of the same day. You're three or four, five, six, seven hours into voir dire. And what you have is in trying to describe to the judge, hey, judge, this is why we're describing it. I am describing this juror, and then I'm telling you the reason why that this juror was struck. How is that duality with regard to what seems to be for every other juror not a reasonable way to read the context of the transcript? Because I think there's no reason – I don't think there's any good descriptive reason to both say that Davis was a black male and to say – and also he's the same race as the defendant. That's what makes – Well, she didn't say that. She said race, age, and sex, and that those three things are like the defendant. That was different from anyone else. There was no one else who said the same, as I can tell. I've read all of it. The same sex, race, and age. That was close to the defendant, right? Right. He was the only juror. But what she's doing is giving reasons because she's saying – she's giving each of these traits as reasons why she's striking the juror. She's saying, I'm striking this juror. She didn't say there were reasons. So this takes us to that Second Circuit case that you rely on because there, the prosecutor in that case actually said – she didn't say reason. She says, the main point I want to draw is that he's of this race and because of this. And so she was saying there that the reason was because of that. That language doesn't seem to be there in the sentence that we have. The sentence that we have is the same as for every other juror, which is juror number, such and such, name, descriptor, and then reason. It seems to follow the same pattern, does it not? I would disagree with that. I'm not saying it's exactly the same case as the Second Circuit case, but she is asked to provide her reasons for the strike. And you might conclude, you could reasonably conclude that the first reference to race was descriptive. But I don't think there's any reason to conclude that this comment that she made about only this juror was descriptive. And as for the point that she also referenced – But if he is the only juror that fits that, then isn't it still descriptive? In other words, if he wasn't the only juror, if there were three or four other jurors that had the same description, but he was the only one, then maybe we were closer to that. But if he's the only juror that in fact shares those traits with the defender in this case, how is that not a valid way to describe somebody? I'm not – well, actually, I'm not sure about if the record – if that's correct that he was the only juror that shared – Tell me who else. I'm not sure. Well, there were other men, correct? There were other men. I'm not sure if there were other men who were the same age. Right. Well, that's the question. How – so it seems like in her – there might be a debate as to whether or not it's a description. But in her description of Mr. Davis, it's race, it's gender, and it's age. And it seems to me that there were others who matched the gender, and perhaps others at least she could have commented as well on the age. It was just with Mr. Davis that all three were identified, correct? I'm not sure about that, but – oh, that all three were identified? Yes, that's definitely right. And, I mean, just – and the reason why age and gender, I think, are helpful to us is because they're showing that she is giving these shared characteristics as reasons for the strike. She is essentially saying these – I want to strike someone who has similar characteristics to Mr. Davis. Like, I want to strike someone who is like Mr. Davis, and part of that is that he was the same race as Mr. Davis. And I think – and you have to – There's another reason that the district court gave for reading this particular fact the way that it did, right? Which are you referring to? So the district court seemed to suggest that another contextual clue that we can look at is that nobody identified this as a reason. In other words, you now presented us as a gotcha. In other words – and that's a rough way to say it, but as you point out, this is the most direct statement I've ever seen of someone saying this is the reason why I'm striking someone. Yet, at the time, nobody understood it that way. And the best evidence of that is defense counsel who – and let's be clear, no one is saying the counsel is ineffective here. And, frankly, I've never seen a more preserved Batson challenge in my life. I mean, Batson was brought up at least six separate times that I counted as part of the voir dire transcript. But the next day, when they get back to this, if you look, at no time does he say – does counsel then say to the court, Judge, they gave us a reason, race, for this. What he says is no reason was given for the strike. That's the argument they make. And so what district court seemed to suggest is even everybody in the room didn't understand this contextually as race as being a reason. And what they understood is – what they understood the argument to be is there was no legitimate or valid reason given for a strike, right? Well, I believe he said the next day there is no great mutual reason. And just to – and just to comment on that. Let me read – let me read Mr. Wood. This is at page 33 of docket entry 14-4. Quote, those two, which are the two jurors, Davis and Hammeter, she gave no reason, no articulable reason, and I submit to you that she can give no reason. That's what she said. She said no reason was given. Not that there was a race reason, as you're arguing today, but that there was no reason. Well, okay. So you're talking about the day after. I think that's how I started off saying it. Yes, that's correct. And I misunderstood. I apologize. But the day before, he did say a racial reason for striking the black jurors. So he did – he didn't – he didn't just say there was no reason given. He did say that he gave a racial reason the day before. And I'm not – I mean, I'm not exactly sure why in the defendant's – But what Mr. Wise said, and this is at page 31 of the same docket entry, quote, Judge, I don't believe – this was from the day before. Judge, I don't believe that Ms. Brooks had given a satisfactory race-neutral answer as to these black jurors, in particular as to Eric Davis, as to Levi Hammeter, and I would ask that the court quash this jury, not impanel them tomorrow. Again, like, if it was as clear-cut as you're saying, then everyone who was on top of Batson as this counsel would, would have been jumping up and down and says, Judge, she said that the reason she struck this juror was because he shared the same race as the defendant. But that statement never comes up at any time in this trial by a counsel who is well aware of Batson. How is that not a clue as to what, in context, everyone understood this to mean? I think that – I'm not entirely sure why he didn't quote back the exact reasons that she gave. But that doesn't change the fact that she said it and there was no – that she said same race. There was no legitimate reason for her to use those words. And the defendant struck the juror on the specific – and I'm sorry. The defendant raised a Batson challenge on the specific grounds that it wasn't race-neutral. I'm having trouble finding the quote in the appendix, but I believe it's D14-331 where he uses – where he says he had not given a satisfactory race-neutral answer. But this is also involving a prosecutor who, during that time, had already been accused and in some instances found guilty, if that's the right word, of having violated Batson. So to your point earlier in terms of the general context and atmosphere, you're dealing with someone arguably from the defense's position with someone who had already engaged in this misconduct, correct? Correct. And, again, I'm not – I can't really explain from the cold record why the defense didn't quote those exact words back to her. It's not – it wouldn't be incredibly surprising to me if those words had much more of an impact on the page than they did live. Like, I could imagine myself to answer your question. But that's certainly one way to look at it. But under the review that we have, and you know that it's a tough review, we're presumed that the fact-finding of the Alabama Supreme Court is correct and that can only be undercome under clearly convincing evidence. In other words, no fair-minded jurist could look at this and reach the conclusion that the Alabama Supreme Court did. And there, you may be right, but the other way – the other right answer may be that nobody understood or believed it to be that. And everyone understood that maybe she failed to meet – the prosecutor failed to meet her burden to present a race-neutral reason, but she didn't say the reason I struck this person was because they were of the same race as the defendant. I agree that she didn't say those exact words. But I think when you look at the – you don't look at that just in isolation. I think when you look at Brooks' history in the trials leading up to that – to Stockwell's trial, when you look at her disproportionate strike rates and her express reference to race, I don't think there's a reasonable view of the record that – So your argument, as I understand it, is that the trial judge at the third step of Batson failed to take into consideration all of the relevant circumstances, the statistical evidence, the statistical comparison. She struck, what, eight out of ten black jurors, number one. Number two, her history, pattern and practice of discriminatory Batson strikes. And number three, the third relevant circumstance, if my memory is correct, is that Brooks said she struck Davis because he gave vague answers with regard to pretrial publicity and vague answers regarding whether or not he can impose the death penalty. And there were two white jurors who gave similar answers and they were not struck. And those three relevant circumstances, when you take those three relevant circumstances in conjunction with the fact that she gave this reason for the strike, the reason that she gave for the strike, that constitutes an unreasonable determination under Batson. Is that your argument? That is our argument. And as to the – So the judge failed to take into consideration all of the relevant circumstances, which Batson specifically says the court is required to do at Batson step three. Is that your argument? That's part of our argument, yes. And just to get on the point about the vagueness answer, it's not just that she didn't strike white jurors who gave similar answers. It's also that she didn't even try to investigate what Davis had learned about the case. There were several times during Bois d'Ire when Brooks asked the court to follow up with jurors on certain questions and the court would often grant that request. But if Brooks was actually concerned about Davis' pretrial exposure, she could have asked the court to explore it further, but she didn't. But the question wasn't about pretrial exposure. In other words, that's not why she was – that's not why she says she exercised the strike. She says she exercised the strike because he couldn't give a straight answer. And you have to read the transcript there, but as you know, he kept saying, well, I heard something and it was something and I'm not sure who I heard it from, but I heard something and I'm not sure it was the defendant, but I heard something about the case of Troy Highway. It was the vagueness of the answers that's the problem, not that he was exposed to pretrial publicity. There were lots of people who were exposed to pretrial publicity. In fact, the defense counsel wanted his trial to be – wanted a whole new jury because so many people were exposed, right? Well, yes, but the reason why the vagueness of his answer would matter to Brooks, if it did, would be that she didn't know enough about his pretrial exposure. I mean, I don't think that just – No, what matters is you have a juror who seems to be obfuscating. And I think that's what she's trying to say there, and that's certainly what the Alabama Supreme Court said. I want to get to King because – Can I just follow up on that one? Because that's what I – at any point did Mr. Davis deny, though, that he had had some exposure to the publicity? It seemed to me the transcript just is unclear as to the source of the information that he received. And then it was for Brooks to follow up to find out the extent of the exposure, which, as you just said, she never did. That's exactly right. And we can – I know I only have a little time left, but we can walk through his response. The court starts by saying, have you heard or read from any source anything about these circumstances that we're here today on? Davis says, I've heard a little something. He never says he read something. He said, I've heard something. Then the court asks him, have you heard or read from any other source? Davis says, now I had heard something. It seems like they're kind of just talking past each other at this point. The court says, you had? And Davis says, I hadn't. And the court then says, what did you hear and where it was from? Then he said it was something in the newspaper or something. And then the court asks him, well, what did you hear in the newspaper or read in the newspaper? And then Davis says, well, I just heard talk about what other people had heard in the newspaper. This is not the kind of protracted exchange that the district court made it out to be. This is about a page long of a Wardeer question where the juror is a little bit confused about the question, but he says from the beginning, I've heard something. Not that he had read something. And then when the trial court presses him a little bit with a few questions, he says, I heard something from other people who had read something in the newspaper. I can't remember exactly what it was. Then the court asks him, did you hear anything about whether this defendant was guilty or not? No. Can you put this all aside and decide the case fairly? Yes. This was not a significant exchange by any means. All right. Mr. Rayfield, you've reserved some time for rebuttal. And Mr. Overing, you may argue for the commissioner. May it please the court. Robert Overing for the state of Alabama. This is a textbook AEDPA case. I think I heard counsel just say that we can't explain why the prosecution said or didn't say something, or why the defense said or didn't say something based on a cold record. It is the epitome of a cold record. Counselor, can you start with I think where the panel originally started in terms of the legal standard? We've got Wallace from our court that says dual motivation is okay. Then we've got the Alabama Supreme Court in this case saying dual motive is not okay. Any taint is unconstitutional. What is your position regarding how we're supposed to analyze this case? Well, I think I just heard counsel say that Wallace is, quote, certainly good law. And it's not just Wallace versus Morrison. But another case which should have been in our brief but wasn't is King versus Moore. That's 196 F3rd 1327. And then in reply, Sockwell raised another case, United States versus Tokar. So this rule is not only good law but has been reaffirmed by the circuit. I suspect that it hasn't been cited too many times because there aren't too many cases where a prosecutor has a race-based reason as well as a race-neutral reason. We don't think that the court needs to reach this issue because under the traditional Batson analysis, there's no violation here. Well, the problem for you as I see it is that the Alabama Supreme Court actually disavowed the justification by the state court that a non-race-neutral reason will cancel out a race-based reason. And so if we're reviewing the Alabama Supreme Court's decision, I don't see how we can accept that argument if we're reviewing their decision. I understand, Your Honor. First and foremost, this is binding law in the 11th Circuit, so it doesn't really matter whether the Alabama Supreme Court agrees or not. This is a pre-output decision, and I'm not aware that the Supreme Court has ever said that the dual motivation applies in Batson claims. Do you have any authority for the proposition from the Supreme Court that it applies in Batson claims? So I think the best authority is Batson itself and powers, which use that word solely, that a prospective juror is struck solely based on race. And so at the time of the Alabama Supreme Court's decision, I think that was clearly established law. But beyond that, the Alabama Supreme Court reached out to decide this issue. It was dicta because the Alabama Supreme Court said that there was no reason. I read Batson a little differently. I'm quoting from Batson at page 97 in the United States Reporter. The prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption or his intuitive judgment that they would be partial to the defendant because of their shared race. That's pretty strong language in support of a Batson challenge under the facts and circumstances of this case. No, I don't think so, Your Honor, because the core of what Batson was concerned about was a stereotype or assumption that this juror is going to favor this defendant because of race. And here, at most, even on their telling of the facts, it was sex, age, and race. And so I think at a certain point the similarity does become a race-neutral reason where if you had a juror who was so similar, if you could list 30 different features, traits of that person that were similar to the defendant, I think that would be a legitimate reason for this juror. How is that not the same as a shared characteristic that would suggest that that juror, solely based on those shared characteristics, would have some sympathy or bias in favor of the defendant? What's the difference there? Because prosecutors cannot make that assumption based on race alone. That's the teaching of Batson. But when you start adding in factors A, B, C, D, all down the line, then similarity starts to look more like a race-neutral explanation. And this accords with the rest of the Supreme Court's equal protection jurisprudence. So, for example, not cited in our brief, but the Godoldig case, which dealt with discrimination based on pregnancy. Pregnancy is obviously intimately related with sex, but the Supreme Court said that it was not discrimination based on sex because the criterion itself was neutral and the line was not drawn just based on sex alone. And so I think the same thing should apply here. If the prosecutor is striking based on similarity and a resemblance that goes well beyond race, then it could look more like a neutral reason. But more importantly, we have facts in the record that are subject to clear air review from the district court, the federal district court, and from the Alabama Criminal Court of Appeals, which found that this strike would have been exercised regardless of race because there were multiple race-neutral legitimate reasons that had nothing to do with the similarity between the defendant and the juror. Does a state court violate Batson if it fails to take into consideration all of the relevant circumstances at Batson Stage 3? No, Your Honor. Well, Batson says it does. Batson says the state court has to take into consideration all relevant circumstances. And so I'll read the Alabama Supreme Court decision now, and it doesn't say anything about Ms. Brooks' history of exercising discriminatory strikes. It doesn't say anything about the statistical comparison. She struck 8 out of 10 black jurors. It doesn't say anything about any of that. Perhaps I misheard you. Yes, the state courts must consider the totality of the circumstances under Batson Step 3. What they do not have to do is mention all of them. And I see in Sockwell's reply there's an agreement there that, no, the state court doesn't have to mention every single fact, argument, or circumstance. But then in the same paragraph, Sockwell says, but there's no indication here that the Alabama Supreme Court took into account those other circumstances. What's the difference between not mentioning something and not giving an indication of something? This Court reversal or affirmance, I think, is part of that, the difference. Well, there's no indication, Your Honor, that the Alabama Supreme Court did not consider those circumstances. It had before it the strike rates, the disparities that are alleged here, and it had before it the other cases, the history of this prosecutor. I wonder why the Alabama Supreme Court, or at least the majority of the eight judges on the Alabama Supreme Court, didn't mention these circumstances if it implicitly took those factors into consideration. It seems like those would be pretty strong factors to support a denial of a Batson violation. Aren't there some indications in the Alabama Supreme Court that they did consider? Can you point us, if they exist, can you point us to those? Yes, so on page 40, the Alabama Supreme Court considered the number of strikes used on black members of the veneer compared to the total number of black people within the veneer. On page 41, the Alabama Supreme Court discusses whether the prosecutor was using her strikes pretextually. And the Alabama Court of Criminal Appeals also used that word pretext. That's a step three inquiry. You don't think about pretext behind a race-neutral reason until you get to step three. So, and then at the end of the opinion, you have that, what's derived as the catch-all paragraph, where they say we've considered everything because it's our obligation in a death case to look. Yeah, I don't have the opinion in front of me, but correct me if I'm wrong. Was there any discussion about Ms. Brooks' history of exercising discriminatory strikes? I don't remember. That's a pretty strong factor, isn't it? That you would think that the Alabama Supreme Court would take in, the majority of the judges on the Alabama Supreme Court would take into consideration and put in the opinion. I don't believe that's in the opinion, but as we've heard, the Alabama Supreme Court and the Court of Criminal Appeals were well aware of Ms. Brooks. She was in the district attorney's office for Montgomery, and this was a big case. Yeah, all of the other cases, you know, they mention her discriminatory strikes, but it's not in the Alabama Supreme Court's decision. I just find that to be odd. I also wonder sometimes why courts don't say more about someone doing that kind of guesswork. That's a case for epidepherence to the implicit findings of the state court. So, counsel, the question I have is, were those prior decisions in the prior history of Ms. Brooks before the Alabama Supreme Court? In other words, did the record in this case and the briefing tell the court about those things? My understanding, I'd have to look back at that, but I do believe that those, some of those cases, at least some of them were raised. Yeah, I mean, Sims itself was raised at the Bois D'Ire, I mean, right? The defense counsel here pointed specifically to Sims to say, Judge, there was a case last week where Ms. Brooks struck juror X and juror Y for this reason and that reason, right? Right. Okay. I thought the court also, or one of the courts said, Well, I've got enough to do with this case in front of me. I'm not worried about other cases. Isn't that in the record as well? I believe something like that, Your Honor. Counsel, back to my question. The briefing, did the briefing to the Alabama Supreme Court discuss these prior cases from Ms. Brooks? Yes. Okay. So the reason I ask these predicate questions is because I want to look at the Alabama Supreme Court's opinion, which I do have in front of me at page 42. And there it says, After carefully reviewing the record as it relates to the prosecutor's preemptory strikes, so in other words, the record as to her preemptory strikes, we must conclude that it does not establish that the prosecutor engaged in disparate treatment in striking of black persons and the striking of white persons. Is that not consideration of all the relevant factors? That sounds to me like the court considered the whole record, and that's its obligation in any case in which a death sentence is considered. I want to ask you about King, because King is a recent decision of this court, and it was written over the dissent. There was a dissent in the case. But King is one where there were three prior factors that were pointed out by the defense in that case. And I point there to page 868 and 869 of the opinion. And there what King contended was that the Georgia Supreme Court failed to consider, one, the discriminatory alderman strikes, so that one strike had been done on a discriminatory basis. I'm sorry, that one, in that case, a Batson challenge had been sustained. So in other words, the prosecutor actually had committed a racial strike in that very case. Second, the statistical evidence of discrimination. So there was heavy statistical evidence. And third, the racial overtones of the trial. And fourth, the prosecutor in that case gave a speech lambasting Batson itself. Did the Georgia Supreme Court in that case mention any of those factors? My understanding is that the Georgia courts did not. Did we reverse for its failure to consider, or what did we do there, and what did we say? So this court held that there was, under AEDPA review, that there was, it was not an unreasonable decision on the Batson issue. And so— I thought the dissent in King was better reason than the majority. Go ahead. Well, and so, right, we're all aware of King, and this was last year, and I think before King came down that Sockwell would have had a better claim. Probably not a successful claim, but a better claim. And many of the same arguments in the opening brief look like they could have been written in the dissent in that case. I'd also like to point out that in King, the racial disparities in the strikes were much more dramatic than we have here. So Sockwell calculates what he calls the challenge rate, which is dividing the number of strikes used on one racial group by the percent of the qualified veneer members in that racial group and determines that there is a disparity of three to four times here. I ran that math on King, and I think it's something like ten times the challenge rate of black veneer members. In other words, the statistics were worse in that case than they were here. Yes. And so there were 34 white veneer members in King, and only three were struck by the prosecution. Here, our numbers are about the same number, total white veneer members, 32, and the prosecution struck seven. So the numbers were worse in King, and yet the Batson challenge was not successful. Batson violations aren't subject to a harmless error review, are they? Has anybody ever said that? It hasn't been an issue in those terms in this case. Of course, we have an argument that even if the strictures of AEDPA are satisfied, that kind of as a matter of equity, that this court should not release a guilty man on the basis of a Batson violation, that there's no evidence in the record had an effect on the fundamental fairness of his trial. We don't really take that into consideration, do we? I mean, the constitutional right rests with the juror, right? Right. And so if the juror was denied an opportunity to serve on the jury, there was a constitutional violation at the trial, right? That's right. Aren't we just sort of confined to that determination? Well, I think it's an open question. When AEDPA is satisfied, are there cases in which, nonetheless, the court should deny the use of its habeas power, and it is an exercise of equitable discretion? Sockwell has served 30 years. He's been sitting in jail for 30 years. And there were several others who have been held accountable for this crime as well, including, was Ms. Harris executed? I don't believe so. Okay. She's still on death row? I couldn't answer that. And what about the co-defendant? What's the status of the co-defendant? You don't know the answer to that question? Okay. All right. But I agree with you those could be relevant considerations in the equities. I direct the court to the very last paragraph or so of the King decision from last year on the Batson issue, the last paragraph in that section, in which the court said a review on habeas is not supposed to be routine error correction. We're not supposed to comb the record and find any constitutional violation, but it is reserved for extreme malfunctions. And the state's position is that when this was a one-off, I mean, not even a one-off violation, but one sentence in the record that had no bearing on guilt or innocence, it was not a systematic problem in the state court system. In fact, the record shows that the Alabama Supreme Court was vigorously enforcing Batson. Against this prosecutor in particular, which is part of the totality of the circumstances that should have been considered in Step 3, which as Judge Wilson said, there's nothing in the record to even support an implicit understanding that it was seriously considered. So, yes. And having looked at some of the cases, admittedly, some of the reasons given for the strikes in those early days after Batson were not very good, like this juror wore sunglasses or got a traffic ticket. But still, the Alabama Supreme Court and the Court of Criminal Appeals were vigorous in enforcing Batson. And so that should be to their credit that in this case, they were obviously taking the constitutional rights seriously and did not find a violation. But we should take into consideration the fact that the Alabama courts were being vigorous in the enforcement to support their decision, but downplay the fact that this prosecutor was unlawfully striking black jurors shouldn't play a big role here. I'm not saying that it shouldn't play a role, but just that in the early days of Batson, the first few years, courts and prosecutors were trying to figure it out because the old regime was essentially you could strike for any reason, and even these bad reasons. And so the Alabama Supreme Court was trying to provide guidance and saying things like, well, you can't strike just based on age. It has to be more particular than that. You can't strike just based on living in a high-crime neighborhood. It's got to be more specific, a better explanation. And so some of those decisions don't suggest a racial imbalance, but rather the Alabama Supreme Court trying to give guidance. And I also don't know whether five is a lot of reversals because Batson is raised in many, perhaps most direct appeals, and so when you have a prosecutor, a DA, who for many decades is trying hundreds, maybe thousands of cases, the fact that there are five successful Batson challenges may not be indicative of an underlying racial motive. Five, some would say that one is too many. But can you speak to this vague response that Mr. Davis gave, which apparently was the non-protectural, pretextual, non-race-based reason? Right. So it's important to keep in mind that everyone in the community knew about this case. It was sensational, right? It was a deputy sheriff in Montgomery whose face was blasted off with a shotgun, and then it turned out his wife had paid for it. I mean, 87% of the veneer answered yes, they had heard about the case. So pretrial publicity was a big deal. And then the court couldn't get a straight answer out of Mr. Davis. But what wasn't straight about it? He didn't deny, as you said, everybody knew about the case, and he didn't deny hearing about the case. He just didn't provide clarity as to where he heard about it. This is a very bizarre way to talk to a judge. If Your Honor asked me, do you know anything about this case? And I said, yeah, something. That would be a little. Well, you don't know what happened to the wife. You don't know what happened to the co-defendant. You're here representing the commissioner. So sometimes people don't have all of the information when they're speaking to a court. That's obvious. That's good. Yeah, you're right, Your Honor. But I think that the question ultimately is whether the prosecutor could be genuine in hearing those answers. Three times he said, I know something without elaborating. And she found that evasive or at least showing a lack of interest, maybe even comprehension. And the state court said there was a lack of candor there. And that's a finding that's subject to clear error review here, and there's no clear and convincing evidence that that finding is wrong. Under AEDPA, that finding is presumed to be correct, that this is a legitimate reason for the strike. Not only was it vague, but he also contradicted himself. First he said he learned about the case in the newspapers. Then he said he heard it from people. First he said he knew something that bore on Sockwell's guilt. Then he said he didn't. Now, Sockwell says Davis never changed his story. I mean, fine, we can all read it and reasonable minds can differ, but that's the whole point of AEDPA is that we're here 30 years later trying to figure out from a cold record what happened and what was the motive. And the person in the best position to make that judgment was the trial judge. And we have to keep in mind it's the credibility and demeanor of the prosecutor. It's also the credibility and demeanor of the juror. And so this is an extremely deferential analysis, more so than any other review of a fact in the state court record, because it relies on firsthand observations. Davis also said that the other reason was that he was unclear on the death penalty. And truly he said it could go either way. But the prosecutor is well within her prerogative to want something more, to want a juror who is pro-death penalty. And in Alabama, even a juror's reservations about the death penalty remain a legitimate ground to support. And we have to keep in mind that the court was questioning the jurors, so the prosecutor had limited opportunity to follow up with each and every one. In summary on the motive, there already was a hearing on the Batson issue. I think they've asked to remand in order to have an evidentiary hearing. The best evidence is not the cold transcript. The best evidence was heard at the time of the Batson motion, and respectfully, it would be more reliable than this court's reading of a cold record 30 years later. At the time, the court let the defense counsel cross-examine the prosecutor. That was an additional step that you don't always see in a Batson motion. And the defense had access to certain written materials from the DA's office. So we have a lot of reasons to think that this was a reliable proceeding. I wanted to make another comment on the Wallace issue, which I think Judge Wilson was asking about. Well, what about the fact that the Alabama Supreme Court rejected this reasoning? And I think it could be a tricky question, but I read Pye to focus on the state court's ultimate reasoning, ultimate ruling, rather than a specific reasoning. And so this court should not vacate a conviction just because the Alabama Supreme Court gave the wrong reason for the right result. Sockwell has the burden to show there's no reasonable basis for the state court to deny relief. That's from Pye and Harrington v. Richter. Your opposing counsel is right, though, that we've never extended Pye to a situation where the state court ruled the opposite of what you're asking us to do. In other words, where there's been silence, we have certainly implied reasons. But this is not a silence case, I think, as Judge Abudu has pointed out. This is a, and Judge Wilson has pointed out, this is a we're reaching one result and you are now asking us to reach a different result case. Is there anything in Pye that would suggest that we could do that? I wouldn't put it that way, Your Honor. We're not asking to reach a different result. The Alabama Supreme Court said that we only look to, that there isn't a mixed motive, essentially, and you're telling us that there is and we should apply a mixed motive analysis. That seems to be the opposite. Well, the Alabama Supreme Court did not reject the finding of the Court of Criminal Appeals that if there are race reasons and non-racial reasons here, that the non-racial reasons were sufficient because the Alabama Supreme Court thought that there weren't a racial reason in the first place. No, what it said is the Alabama Court of Criminal Appeals is wrong that it must be solely based on race and that is wrong as a matter of law and inconsistent with prior precedent of the Alabama Supreme Court. And we reject that even though we agree with the ultimate conclusion because of our own independent findings, right? Yes. I just don't see how that's the opposite. And I just, again, I think Pi is 100% right that we will imply reasons where there is an ultimate determination because that's what ADEPA allows us to do and says we should do. But where there's the opposite of that, I'm having trouble getting that far. Is the answer, let me ask this then, is the answer that we have to look at the law as it existed at the time that the Alabama Supreme Court's decision was given? And not only that, but clearly establish law of the Supreme Court? Yes, for a D1 analysis. And so that's if the court is inclined to say that because the Alabama courts didn't mention certain circumstances that's a legal error, then one way to get out of that is the Wallace analysis. But if it's a purely factual issue, then I'm not sure if that works. I hear you on this seeming to be an extension silence is different than expressly. Well, that's the argument your opposing counsel makes and it's a pretty darn convincing one. Well, I do think that that language in the Alabama Supreme Court's decision was dicta. And so, yeah, it said that, but it's not something that this court needs to take seriously in this case because it wasn't necessary to decide the case. And the Alabama Supreme Court affirmed. It didn't vacate the decision below. And then we also have an argument that a- Well, that's because it may be clearly erroneous is the right phrase. It found that the lower court's finding that race played a role, even if it was a less significant role. It disagreed with that finding, which is why it ultimately upheld the conviction. That's right, Your Honor. I'd like to bring to the court's attention as well the principle that a habeas petitioner should not benefit from erroneous decisional law at the time of adjudication. And a case for that was last year's Guzman v. Secretary 73 F. 4th 1251. And the idea there is that Sockwell should not get a windfall, essentially, because the Alabama Supreme Court did not appreciate that there was an even better reason for reaching the same result. That's not to Sockwell's credit, and it doesn't mean that the outcome would have been any different if the Alabama courts had reasoned correctly. So the general principles of comedy and federalism, I won't say any more about it. Maybe this isn't the case to extend Pye that far. On the issue of failing to mention certain circumstances, facts, and arguments, I think we talked about King a little bit and the interaction between the majority and dissent there. But also Lee has 13 pages of analysis on this very issue, and it says here's how AEDPA works. First, AEDPA deference applies even if a state appellate court's decision is short and does not discuss every fact or argument. The court must recognize all of the implicit fact findings that the state court could have made in favor of its decision and credit every reason the prosecutor gave, indulging every maximum factual inference from the evidentiary record. Let's assume it made a finding on three. I think the argument that Judge Wilson was asking about is why is that not unreasonable where you have all of these other factors which seem to weigh in favor of or seem to suggest a race-based reason for striking versus a finding that we have or a determination that we have that it wasn't based on race. Why is that not an unreasonable mis-question of fact to law? Well, the ultimate question is an issue of pure fact in a Babson case, whether there was a racial motive. But the point is we just have to be careful between one thing is the state court's failed to mention and another thing is well. So, again, we're putting aside failed to mention. So the ultimate question that I think Judge Wilson asked your opposing counsel, and I think you should answer it yourself if you haven't, is there are four or five factors that they pointed to mixed with this vagueness issue that they are relying on for the strike. Why, in looking at that record, is it not clearly convincingly wrong or unreasonable at the end of the day for a state court to have reached that conclusion? So I've discussed the prosecutor's history of Babson violations. I've discussed the strike rate disparity, and we've seen cases with higher disparities where the Babson violation was not successful. And then the cases they rely upon, McGahee and Adkins, if they're even good law after Lee and King on some of these points, are so eminently distinguishable. I think in McGahee, the prosecution struck every black member of the veneer and gave an expressly racial reason for striking the last one, that he didn't want to leave one black juror, and also engaged in racial stereotyping about intelligence. And then in Adkins, the prosecution explicitly noted the race of only and every black member of the veneer. And then the prosecution said that he didn't feel bound by Babson because the defendant was not black. And, of course, that was wrong, but the fact that the prosecutor said, I'm not bound by Babson, was an extremely relevant circumstance that we don't have here. The court should affirm because this is a pure issue of fact, and there are many fact findings in the record by the state courts and by the district court, and there has not been clear and convincing evidence, which is the standard under 2254E, needed to rebut those facts. This is not the exceptional circumstance in which appellate judges should use a cold record to second-guess a trial judge's decision about likely motivation. The presentation should be denied and the court should affirm. Thank you. All right. Thank you, Mr. Overing. Mr. Rayfield, you've reserved some time for rebuttal. Okay. Thank you, Your Honor. So I want to make one quick point and then address the failure to mention versus failure to consider and then also address King. So in response to Judge Wilson's question, I don't have a cite with me, but Batson errors are, in fact, structural errors. There's no harmless error analysis. I don't have a cite, but I can tell you that there are Supreme Court cases that say if a single juror is struck for a race-based reason, that's a constitutional error that requires a new trial regardless of any harmless error analysis. Now, as to the failure to mention versus failure to consider, this Court's cases are a little bit sort of they go back and forth a little bit on this issue. I'm trying to say that gently, but this Court has been very clear on two things. One is that it does not impose an opinion-writing requirement on state courts. We understand and respect that. But the Court has been equally clear that a state court's failure to consider relevant circumstances is something that you take into account when asking. But the problem is where there's silence, we've seen this suggest, that's how we've sort of threaded the needle that you're uncomfortable with right now in King. So in McGehee, what we said was it was clear on its face that the state court didn't consider these things. How do we have that indication here where we have broad statements, agreed, broad statements from the Alabama court saying we've considered the relevant factors and we've looked at all the arguments in the brief and we find no error here? Right. I think this case falls on the McGehee side for this reason. What the Court is doing is it looks for clues in the state court's opinion that it's considering certain factors to the exclusion of others. In McGehee, the Court considered two of the three of the prosecutors. Well, I think what it's, what we have to do is to look to see if they relimited the consideration of relevant factors, right? Yes, and I think the Court here did exactly that. This is just like McGehee because the state court did scrutinize those little reasons given for striking several other black veneer members, the black veneer members that were mentioned at the end. But it didn't do that for Davis. And so as I read this Court's cases, which is sort of like an expressio unius kind of analysis, for lack of a better word, the fact that the state court did analyze pretext with respect to those jurors but didn't do that for Davis, the Court closed its analysis of Davis after Step 2 and did get into those pretextual Didn't it explicitly say, though, it considered the context of the entire transcript? I mean, the Court said that. It did say we considered everything. I'm not denying that. And it specifically mentioned the context. It quoted relevant parts of the transcript. It mentioned the statistics. It didn't go through them in the detail that you have, but it mentioned how many black jurors there were, how many white jurors who were struck, how many the prosecution struck regarding that. And then, of course, it had your briefs and all arguments and said we considered everything that you presented to us, right? I don't think a generalized kind of catch-all statements like that moved the needle under EDPA. There was an exact, the exact same statement. But if silence is okay, and we know silence is okay, if they literally said nothing, King suggests that's okay. I think that that statement is an equivalent to saying we summarily affirm. What you just, the quote that you're doing, that quote, a quote After carefully reviewing the record as it relates to the prosecutor's preemptory strikes? Yes. How is that not indication? In other words, don't we take courts at their word? If they say they looked at the record, then why do we not believe that they looked at the record? The exact same quote was in McGehee. In McGehee, the court said the Alabama, in that case, Court of Criminal Appeals found that, quote, After reviewing the state's reasons for the release of its preemptory strikes, including those not specifically challenged by the appellant, individually and collectively, we conclude that the trial court judge correctly denied this appellant's motion to quash the charge. But in McGehee, as we said in King, the cases, there the Alabama court's opinion, by its own terms, clearly limited its analysis to exclude the explicitly racial rationale for a strike. Here, there's no indication that they excluded anything that was, in other words, that they didn't say that we're not considering or explicitly exclude consideration of a factor, did they? I think that that is the only implication you can draw, I'm sorry, not the only implication, but the best implication you can draw from the fact that the court closed its analysis directly after Step 2 and considered pretextual factors for jurors other than Davis. That's what makes this case just like McGehee. It's analyzing certain jurors to the exclusion of others that maybe didn't have as strong of a rationale. Now, I do want to address King in the limited time I have. So, I think King is a really good illustration of our position. The jury supreme court in that case, and I encourage you to look at the opinion in that case, it's incredibly detailed. It performed an extensive Step 3 inquiry. It analyzed the prosecutor's alleged misstatements of the record. It looked for pretext by comparing the reasons given for striking the black jurors to the white jurors who weren't struck, and it scrutinized the comments by the prosecutor about the jurors' religious practices and other things. The state court did leave out some factors that the defendant thought was important, but this court held that the state court's analysis was enough to satisfy it, and you didn't have a lot of the same major indicators of discrimination that you have here, like Brooks' history of discrimination and her express references to race. And just to get to the question that you were ending with my colleague, I think if you look at everything, if you look at Brooks' history, the strike rates, her express reference to race, all they're left with is that despite all those things, you can reasonably conclude that she struck Davis because he was vague, that he sort of stumbled on his response in over a half of a page of a transcript. I don't think that's a reasonable reading of the exchange. And again, neither the trial court nor the Alabama Supreme Court conducted this analysis. I'm not saying the court had to mention everything, but I am saying that you don't have the kind of analysis in both Lee and King that you can really give, like, you know, that you can really hang your hat on and give deference to. All right. Thank you, Mr. Rayfield and Mr. Overing. The case was very well argued. We appreciate your arguments. The court is adjourned. Thank you.